UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Tammy Russell,**

   *Plaintiff,*

v.                 **Case 3:21-cv-289**
                   **Judge Thomas M. Rose**

**Department of the Treasury,**

   *Defendant.*

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF 21) AND ORDERING THE CLERK TO TERMINATE THE CASE**

---

  Pending before the Court is Defendant's Motion for Summary Judgment. (ECF 21.) Therein, Defendant Department of the Treasury seeks judgment on Plaintiff Tammy Russell's claims of disability discrimination, age discrimination and retaliation. Because Plaintiff has no evidence that she is disabled or has suffered materially disparate treatment, summary judgment will be awarded to Defendant on Plaintiff's claims.

**I.  Background**

  Plaintiff Tammy Russell was born in 1959 and has been a revenue officer with IRS since March 2005. (ECF 15-1, PageID 70, 107.) Plaintiff is responsible for collecting delinquent taxes, securing delinquent returns, and interviewing and counseling taxpayers. (ECF 15-5, PageID 366.) From 2017 to 2019 Plaintiff was also responsible for tasks such as meeting taxpayers or their

representatives at their businesses or residences and viewing assets and looking for indications of hardship. (*Id.*; and ECF 15-1, PageID 109-110.)

Plaintiff was a member of the National Treasury Employees Union ("NTEU"). (ECF 15-1, PageID 53-54, 90.) Plaintiff claims that she suffers from Post-Traumatic Stress Disorder ("PTSD"), anxiety, and Attention Deficit Disorder ("ADD"). (ECF 1, PageID 15, ¶15.) Plaintiff's ADD is managed with Adderall, and her anxiety is managed with Wellbutrin. (ECF 15-1, PageID 92.) Plaintiff has proffered no admissible evidence that she suffers from PTSD. (*See* ECF 16-6 to16-9; ECF 17-4, 17-7 to 17-7.)

In October 2017, Kenneth Slavkovsky became Plaintiff's direct supervisor. (ECF 18-1, PageID 1801.) Slavkovsky was born in 1965 (*Id.*, PageID 1802); thus, when he began supervising Plaintiff, he was 52 and Plaintiff was 58. Plaintiff's second-line supervisor was DeWitt Amster, who reported to the Area Director, Renee Mitchell. (ECF 15-1, PageID 226, 232.) Plaintiff's first EEO contact was December 7, 2017 (*Id.*, PageID 759), and Slavkovsky became aware of that contact sometime the same month. (ECF 18-1, PageID 1805.)

Prior to becoming Plaintiff's supervisor in October 2017, Slavkovsky had not been involved in any of Plaintiff's EEO complaints. (ECF 15-1, PageID 215, 226, 248-249; ECF 18-1, PageID 1805

Plaintiff claims that Slavkovsky subjected her to seven adverse employment decisions that constituted disparate treatment discrimination or retaliation: (1) "on November 30, 2017, [Plaintiff's] annual evaluation was mailed to her home while she was on leave"; (2) "[Plaintiff] was placed on Leave Without Pay (LWOP), instead of paid leave . . ."; (3) "since March 16, 2018, management has not responded to [Plaintiff's] reasonable accommodation request"; (4) "on May

2

1, 2018, [Plaintiff's] manager assigned a Revenue Officer to ride along with [Plaintiff] to conduct a field observation"; (5) "on May 23, 2018, [Plaintiff's] manager had a co-worker sit in on her midyear review"; (6) "on December 14, 2018, [Plaintiff's] supervisor issued a written management directive prohibiting [Plaintiff] from teleworking"; and (7) "on or about December 19, 2018, and again on February 14, 2019, [Plaintiff's] supervisor denied [Plaintiff's] request for advanced sick leave for a multiday absence in December 2018." (ECF 15-12, PageID 758-759.)

1. **Performance Appraisal Sent to Plaintiff by Mail**

From September 25, 2017, to March 5, 2018, Plaintiff was out of the office on sick leave because she was under a "doctor's care." (ECF 15-1, PageID 245; ECF 18-1, PageID 1806.) Thus, when Slavkovsky became Plaintiff's manager, Plaintiff was on lengthy period of leave.

While Plaintiff was on leave, the NTEU 2016 National Agreement required that Slavkovsky conduct Plaintiff's performance appraisal. (ECF 18-1, PageID 1805.) Slavkovsky mailed the performance appraisal to Plaintiff. Plaintiff does not challenge the content of the performance appraisal. Rather, Plaintiff asserts that she was denied the opportunity to challenge her rating, as provided for by the 2016 National Agreement. (ECF 18-5, PageID 1993.) In her deposition, however, Plaintiff acknowledged that she was afforded the opportunity to challenge the rating through the NTEU. (Russell Dep., ECF 15-1, PageID 139-141, pp. 75-77.) She was unsuccessful. (*Id.*)

2. **Plaintiff Placed on Leave without Pay ("LWOP") Instead of Paid Sick Leave**

During Plaintiff's extended period of leave, she would periodically send emails to management asking that certain categories of leave be applied toward certain weeks of her absence. (ECF 18-1, PageID 1810-12.) Plaintiff asserts that Slavkovsky inappropriately denied requests for

3

advanced sick leave, that is, leave she had not yet earned, but would earn at some point in the future. (ECF 15-1, PageID 151.) Plaintiff's supervisor denied her advanced sick leave, because he believed that she appeared unlikely to be able to repay the advanced leave. (ECF 18-1, PageID 1813.) Indeed, during this period, Plaintiff submitted retirement paperwork to Slavkovsky that placed into question whether she would be able to repay the leave consistent with the National Agreement. (*Id.*; ECF 15-1, PageID 133-136; ECF 15-11, PageID 745.) Later, when Plaintiff withdrew her retirement application, Slavkovsky informed her that she could request conversion of 79 hours of leave to FMLA-advanced sick leave. (ECF 18-1, PageID 1815-1816.) In April 2018, Slavkovsky made the change. (*Id.*).

### 3. Plaintiff's Request for Accommodation

The Complaint does not assert a claim for failure to accommodate under the Rehabilitation Act, but instead alleges that Treasury's handling of her accommodation request was discriminatory and retaliatory. She "believes her accommodation requests were denied due to her prior protected activity and...that younger co-workers were easily able to receive Accommodations." (ECF 1, PageID 4.)

On March 2, 2018, Plaintiff informed Slavkovsky that she had submitted a request for a reasonable accommodation. (ECF 18-1, PageID 1816.) In the accommodation request, Plaintiff claimed that she suffered from anxiety, PTSD, and ADD (ECF 16-2, PageID 809) and requested the following accommodations: "flexplace/telework," "NTEU Steward . . . [at] all meetings with management," "additional breaks when feeling overwhelmed," "[s]pace where employee does not feel crowded/less distractions," "[c]losed office space due to distractions," "20% reduction of inventory," "stretch breaks when feel need," and an "ergonomic chair." (ECF 16-2, PageID 838.)

4

On August 10, 2018, a decision was made on the reasonable accommodation request. (*Id.* at 812.) Plaintiff was granted an ergonomic chair for her back pain, a modified break schedule, and a temporarily reduced caseload. As an alternative to a private office to avoid alleged distractions, Plaintiff was offered a headset or earplugs. (February 21, 2019, Memorandum of P. Mamo, ECF 18-4, PageID 1951.) Plaintiff appealed, and the decision was affirmed. (*Id.*)

**4. A Union Representative Attended a Field Observation of Plaintiff**

Prior to a field observation with Slavkovsky, Plaintiff requested NTEU representation at all meetings with management. (ECF 15-1, PageID 191.) Slavkovsky assigned Revenue Officer Robin White, the NTEU Chapter President, to "ride along" with the Plaintiff to a May 1, 2018, field observation to have a union witness to the field observation. (ECF 18-1, PageID 1821.) Slavkovsky thereafter met Plaintiff and White at the taxpayer's residence to perform a field observation of Plaintiff. (*Id.*) Plaintiff does not identify how White's participation negatively impacted her field observation. (ECF 15-1, PageID 179-184.)

**5. A Union Representative Sat in on Plaintiff's Midyear Review**

In May 2018, NTEU representative Jonathan Johnson sat in on Plaintiff's mid-year review. (ECF 15-1, PageID 184-185.) Plaintiff had previously requested NTEU representation at all meetings with management. (*Id.* at 127.) Moreover, Slavkovsky asked Plaintiff if it "was okay" if Johnson observed the meeting. Plaintiff said it was "okay." (*Id.* at 129.) During her deposition, Plaintiff testified initially that Slavkovsky did not ask permission, but changed her testimony after she was impeached with a prior admission. (*Id.* at 128-129.) Plaintiff does not identify how, if at all, Johnson's presence negatively impacted her midyear performance review. (*Id.* at 132.)

**6. Written Directive to Plaintiff Regarding Telework**

5

During the relevant time period, Plaintiff was not allowed to telework because her performance was less than fully successful. (*Id.* at 75, 134.) On December 12, 2018, Plaintiff called Slavkovsky at approximately 9:15 a.m. and told him that her tour of duty started at 9:00 a.m. (*Compare* ECF 18-2, PageID 1860, *with* ECF 15-8, PageID 624.) During the call Plaintiff stated that she could not boot up her computer or use her wi-fi. (*Id.*) She further stated that she was going to the field shortly. (*Id.*) Slavkovsky asked Plaintiff where she was, to which she responded that she was at her home. (*Id.*) At that point, Slavkovsky reminded Plaintiff that she did not have a telework agreement and therefore could not work at home, as that is considered a telework site. (*Id.*) Plaintiff then indicated that she was starting her day at 9:15 a.m. and hung up. (*Id.*)

Thereafter, Slavkovsky issued Plaintiff a written directive reminding her that she was ineligible to telework, pursuant to Article 50 of the National Agreement. (ECF 18-2, PageID 1859.)

**7. Denial of Plaintiff's Request for Advanced Sick Leave**

On December 17, 2018, Plaintiff faxed Slavkovsky a handwritten note in which she requested advanced sick leave from December 17, 2018, through December 31, 2018. Attached to the request was a letter from a medical provider stating that the patient's absence was "medical provider advised due to illness or injury." (*Id.*, PageID 1861.)

On December 19, 2018, Slavkovsky sent Plaintiff a memorandum stating that she was provisionally approved FMLA until she is able to provide supporting medical documentation. The document states, in part:

> You have indicated the need for FMLA based on your request for leave. I am unable to approve your application; therefore, until I receive the form 380-E (enclosed) from you, I will provisionally approve you to use [FMLA-LWOP] continuous from Dec. 17, 2018, to December 31, 2018, for a total of 88 hours. Starting January 2, 2019, I will approve you to use 30 hours per month to care for your

6

>    condition. I will contact you to make a final determination on this
>    issue when I receive the form 380-E.

(*Id.*, PageID 1876.)

After Plaintiff expressed to Slavkovsky that she was not seeking FMLA leave, but advanced sick leave, Slavkovsky clarified that Plaintiff was still required to submit additional documentation, and he was allowing her until February 26, 2019, to provide him "with acceptable medical documentation from your health care provider that satisfies the requirements of Article 34, Section 3C, Section 6A, and Section 6C." (*Id.* at 1885.). Plaintiff did not submit additional documentation. (ECF 15-1, PageID 205.)

On October 20, 2021, Plaintiff filed suit against Defendant. (ECF 1.) Defendant moved for summary judgment on all claims. (ECF 21.) Plaintiff has responded (ECF 23) and Defendant has replied (ECF 24), rendering the matter ripe for decision.

**II.     Standard**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. at 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.,* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. at 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the

nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

## III. Analysis

Plaintiff asserts claims of disability discrimination (*Id*. at 5), age discrimination (ECF 1, PageID 4), and retaliation. (*Id*. at 6). Defendant seeks summary judgment on each claim. (ECF 21.)

### A. ADA Discrimination

Title I of Americans with Disabilities Act of 1990, prohibits employers from discriminating against any qualified individual with a disability on the basis of that disability. 42 U.S.C. §§ 12101, 12111. The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

A plaintiff may establish a claim of discrimination either by presenting direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tenn. Valley Auth*., 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence is where an employer's statement directly shows discriminatory motive. *See Schlett v. Avco Fin. Servs., Inc.*, 950 F. Supp. 823, 828 (N.D. Ohio 1996). Evidence that would require the jury to infer a fact is not direct evidence. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). Direct evidence, in the form of verbal comments, will be similar to an employer telling its employee, "I fired you because you are disabled." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998); *see also In re Rodriguez*, 487 F.3d 1001, 1008-09 (6th Cir. 2007) (plaintiff had direct evidence of discrimination where a decision-maker stated that the plaintiff would not receive a promotion because of his Hispanic speech pattern and accent). The discriminatory statement must bear some kind of connection to the adverse action. *See C*e*saro v. Lakeville Cmty. Sch. Dis*t., 953 F.2d 252, 254 (6th Cir. 1992).   Plaintiff does not contend that she has direct evidence.

In the absence of direct evidence of discrimination, Plaintiff's disparate treatment claims can only survive summary judgment if she can produce circumstantial evidence establishing each essential element of a *prima facie* case of discrimination. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–54 (1981).

Under the *McDonnell-Douglas* framework, a plaintiff alleging disability discrimination must show: (1) she is disabled; (2) she is otherwise qualified for her position; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of her disability; and (5) similarly situated employees outside of the protected class were treated better, or the plaintiff's

10

position was filled by someone outside of the protected class. *Scott v. FirstMerit Corp.*, 167 F. App'x 480, 487 (6th Cir. 2006); *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999)). If a plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 377 (6th Cir. 2002). If the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the reason given is merely a pretext for discrimination. *Id*. at 378.

The Rehabilitation Act incorporates the Americans with Disabilities Act's definition of disability: (i) a physical or mental impairment that substantially limits one or more major life activities, (ii) "a record of such an impairment," or (iii) being "regarded as having such an impairment." *Bent-Crumbley v. Brennan*, 799 Fed. App'x. 342, 346 (6th Cir. 2020) (citing 42 U.S.C. § 12102(1)(A)-(C) and *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002)). A major life activity includes "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii)). It is not enough for a plaintiff to show an impairment affects a major life activity; rather a plaintiff must show it substantially limits one or more major life activities. *Whitesell v. Fms Fin. Mgmt. Servs., LLC*, Case 3:18-cv-00496, 2020 U.S. Dist. LEXIS 93281, at *13 (M.D. Tenn. May 28, 2020) (citing 42 U.S.C. § 12102 and 29 C.F.R. § 1630.2(j)).

Defendant asserts Plaintiff's *prima facie* case fails because she certainly cannot show that she is disabled. Plaintiff claims she is disabled by PTSD, anxiety, and ADD. As to ADD, Plaintiff admits her ADD is managed with Adderall, and her anxiety is managed with Wellbutrin. (ECF 15-1, PageID 92.) But there is no clear PTSD-testing reflected in her medical/therapy record. Plaintiff claims she was diagnosed with PTSD in 2017. (ECF 15-1, PageID 85-86). However, her records

11

reflect a series of instances where Plaintiff self-reported PTSD to her providers. (ECF 16-6, PageID 1012, 1023-21.) The psychiatrist Plaintiff identified in her deposition, Dr. Suseela Nalurri (ECF 15-1, PageID 86), did not begin seeing Plaintiff until November 1, 2019 (ECF 16-9, PageID 1354)—nearly two years after Plaintiff self-reported PTSD to her provider.

Dr. Nalurri noted in her "initial assessment" that Plaintiff's "complaint" was "depression, anxiety, PTSD." (*Id.*) In other words, Plaintiff self-reported a PTSD diagnosis to her psychiatrist in 2019, and it appears from Dr. Nalurri's records that Dr. Nalurri accepted that as fact and did not conduct her own diagnostic testing. (ECF 16-9.) When asked during her deposition who diagnosed her with PTSD, Plaintiff could not remember. (ECF 15-1, PageID 86.)

Plaintiff's current therapist, Debbie Dickson, is unwilling to confirm a PTSD diagnosis. (ECF 17-1, PageID 1466-67, 1483-84.) Without medical records confirming diagnostic testing for PTSD, Plaintiff's PTSD diagnosis is at best a self-diagnosis, which is insufficient. *Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 433-34 (6th Cir. 2016). Plaintiff's other conditions do not substantially limit her major life activities. Plaintiff states that her conditions collectively cause her to be less "outgoing," "bubbly," and "active"—and to have a "hard time" concentrating—but she does not let her conditions "define her." (ECF 15-1, PageID 98-99.)

Plaintiff counters with a contention that Defendant has waived the question of whether Plaintiff is disabled by offering reasonable accommodations and FMLA leave. (ECF 23, PageID 2545) ("prior to this action … Plaintiff has filed numerous EEO complaints predicated on her disabilities and has made requests for reasonable accommodations based on her disabilities. Defendant has also granted Plaintiff FMLA due to her disabilities. Certainly, by these actions Defendant has waived any argument that Ms. Russell is not disabled, and furthermore, they have

12

'perceived' her disabilities for more than eight years.") Plaintiff refers the Court to no caselaw supporting this novel proposition. Plaintiff has marshaled insufficient proof to establish her alleged disabled status.

### B. Age Discrimination

The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq*. "prohibits an employer from 'discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Russell v. AAA Limo*, 2:15-cv-2455, 2016 WL 874770, at *4 (W.D. Tenn. Feb. 17, 2016) (quoting 29 U.S.C. § 623(a)(1)). Pleading disparate treatment under the ADEA requires a plaintiff to allege that "the employer acted with the intention of discriminating on the basis of age." *Abbot v. Federal Forge, Inc.*, 912 F.2d 867, 871 (6th Cir. 1990). This can be accomplished by "alleging direct evidence of discrimination, or [ ] by alleging circumstantial or indirect evidence from which discrimination can be inferred." *McKnight v. Gates*, No. 3:06-1019, 2007 WL 1849986, at *10 (M.D. Tenn. Jun. 20, 2007). Plaintiff brings no direct evidence to the attention of the Court.

To prove *prima facie* discrimination under the ADEA, the plaintiff must show: 1. that he is at least 40 years old, 2. that he was subject to an adverse employment decision, 3. that he was qualified for the position that he held, and 4. that he was replaced by a "significantly younger person" or treated differently than similarly situated individuals. *See House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). Trivially disparate treatment will not sustain a claim. *Smith v. Okla. ex rel. Tulsa Cnty. Dist. Att'y*, 245 F. App'x 807, 813 (10th Cir. 2007). Plaintiff's age discrimination claim founders on the lack of similarly situated individuals being treated differently.

13

Here, none of the actions of which Plaintiff complains rise to the level of an adverse employment action. Mailing of a performance appraisal is not an adverse employment action. While a negative performance appraisal can in some circumstances rise to the level of an adverse action, Plaintiff in this suit does not challenge the content of any performance appraisal. (ECF 1, PageID 2-3; ECF 15-12, PageID 758.) Instead, she claims the method of its delivery to her was adverse because she was unable to challenge the appraisal. (*Id.*) However, the uncontroverted record shows she both received the appraisal and unsuccessfully challenged it through her union. (ECF 15-1, PageID 140.) Thus, the method of delivery was not adverse.

Placement on LWOP instead of advanced sick leave in this situation is not an adverse action. Denial of advanced sick leave, where the employee's ability to repay the advanced sick leave is in question, does not constitute an adverse employment action. *Kaminsky v. Wilkie*, 5:19-cv-20, 2020 U.S. Dist. LEXIS 121816, at *24 (N.D. Ohio July 10, 2020) ("The denial of Kaminsky's request for advanced sick leave ["ASL"] at a time when she already had a negative sick leave balance . . ., and in the face of her four-year pattern of requiring ASL without being able to repay it, was not an 'adverse' action.") (citing *Sapp v. Potter*, 1:07-cv-00650, 2012 U.S. Dist. LEXIS 127740, 2012 WL 3890259, at *13 (E.D. Tex. July 26, 2012)).

Once Plaintiff submitted retirement paperwork to her supervisor, she placed her ability to repay the leave in doubt under the National Agreement. Later, when Plaintiff withdrew her retirement paperwork, management allowed Plaintiff to convert some of her leave to advanced sick leave. Thus, the record shows that Plaintiff was only denied advanced leave because her ability to repay was in question, so the denial of advanced sick leave is not an adverse employment action.

14

The fact that Plaintiff's supervisor assigned a union representative to ride with Plaintiff to a taxpayer's residence—where the supervisor conducted a field observation of Plaintiff—does not constate an adverse employment action. Plaintiff requested union presence at all meetings. (ECF 15-1, PageID 191.) Plaintiff cannot identify how, if at all, the union representative's presence during the field observation negatively impacted her supervisor's field observation of Plaintiff. (*Id.* at 115-118.) Thus, union presence during the field observation does not constitute an adverse employment action.

The presence of a union representative at Plaintiff's midyear review also does not constitute an adverse action. Plaintiff requested union presence at all meetings with management. (*Id.* at 127.) Furthermore, Plaintiff's supervisor asked Plaintiff's permission first, and she said it was "okay." (*Id.* at 129.) Plaintiff cannot identify how if at all the union representative's presence adversely affected the review itself. (*Id.* at 132.) Thus, union presence at her midyear review does not constitute an adverse action.

The same is true of the written directive regarding telework. After learning that Plaintiff attempted to access the Department's network at home, Plaintiff's supervisor issued Plaintiff a directive reminding Plaintiff that she was ineligible to telework. (ECF 18-2, PageID 1859.) Plaintiff admits that, when her supervisor issued her the foregoing directive, she indeed was not permitted to telework. (ECF 15-1, PageID 198.) Thus, the written directive did not result in a "materially adverse change in the terms and conditions of [a plaintiff's] employment." *White v. Burlington N. & Santa Fe Ry. Comm'n*, 364 F.3d 789, 795 (6th Cir. 2004) (*en banc*) (citation omitted). Accordingly, Plaintiff cannot establish that she suffered any adverse employment action.

15

Even if any of the above actions were adverse, Plaintiff cannot show that similarly situated employees were treated more favorably. A plaintiff must show that comparator employees were "similarly situated in all relevant respects," *Wright v. Murray Guard, Inc*., 455 F.3d 702, 710 (6th Cir. 2006), by offering evidence of such similarity and more favorable treatment. *Sands v. Brennan*, 16-12860, 2018 WL 4523121, at *5 (E.D. Mich. July 26, 2018). Individuals with whom a plaintiff seeks to compare their treatment "must have dealt with the same supervisor, have been subjected to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff cannot identify anyone who was treated more favorably. (ECF 15-1, PageID 141; 155, 166, 182-183, 195-196, 202, 213.) Plaintiff's *prima facie* discrimination case thus fails. Thus, for want of materially disparate treatment Plaintiffs' age discrimination claim fails. Thus, Court need not resolve whether Plaintiff has evidence to dispel Defendant's asserted non-discriminatory reasons for its actions as pretextual.

### C. Retaliation

"Retaliation claims are treated the same whether brought under the ADA or Title VII." . *Barrett v. Lucent Techs., Inc*., 36 F. App'x 835, 840 (6th Cir. 2002) (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997). Plaintiff must show "(1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019) (internal quotations and citations omitted).

Moreover, retaliation claims must be proven under the but-for-causation standard. *Univ. of Texas SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Fletcher v. U.S. Renal Care*, 709 F. App'x 347 (6th Cir. 2017).

Here, the non-existence of adverse employment actions in particular dooms Plaintiff's retaliation claim. Anti-retaliation law protects an individual not from all adverse action, "but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). The injury or harm must rise to the level that it "would have dissuaded a reasonable employee from making or supporting a complaint of discrimination." *Id*. at 67-68 (distinguishing between significant and trivial harms).

Plaintiff cannot show injury or harm, let alone an injury or harm that would have dissuaded a reasonable employee from making a complaint. Even if she could, Plaintiff first contacted the EEO regarding Slavkovsky on December 7, 2017 (ECF 15-12, PageID 758), after he had already mailed her performance evaluation and denied multiple requests for advanced medical leave. As a matter of law, Plaintiff's protected activity of contacting the EEO cannot shield her from the consequences of any actions taken before that contact. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505-06 (6th Cir. 2014) (noting line of precedent finding that discipline [or adverse actions] that "proceed[] along lines previously contemplated, though not yet definitely determined" by employer suggests that reliance on temporal proximity as evidence of causation would be improper).

Nor can Plaintiff otherwise show that her protected activity was the "but for" causation of any supervisor's decisions. Her retaliation claim thus fails.

**IV.     Conclusion**

Because Plaintiff has no evidence that she is disabled or has suffered materially disparate treatment, Defendant's Motion for Summary Judgment, (ECF 21), is **GRANTED**. The Clerk is **ORDERED** to **TERMINATE** this case from the dockets of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, March 3, 2025.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE